IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LILIAN ALEXANDRIA STELLAR,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.    23-cv-2361** |
| | : | |
| **MARTIN O'MALLEY,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OPINION**</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **April 5, 2024**

  Plaintiff Lillian Alexandria Stellar brought this action seeking review of the Commissioner of Social Security Administration's (SSA) decision terminating her[1] Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381–1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 8) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

**I.      PROCEDURAL HISTORY**

  Plaintiff was approved for SSI as a disabled child effective February 1, 2009, due to autism spectrum disorder and adjustment disorder with mixed anxiety and depressed mood.  (R. 108).  When Plaintiff reached age 18, the SSA redetermined her eligibility (as required by law) and found that she was no longer disabled as of December 1, 2018.  (R. 89-92).  The SSA

---

[1]  "Plaintiff's name at birth was Brandon Alexander Decker.  Over the course of this claim, Plaintiff effected a name and gender change.  She will be referred to . . . by her legal name of Lillian Stellar . . . ."  (Pl.'s Br., ECF No. 8, at 1 n.1 (internal citations omitted)).

reached the same determination upon reconsideration, and Plaintiff requested a hearing before the ALJ.  (R. 88, 133-36).  Plaintiff, represented by counsel, and a vocational expert testified at the November 17, 2022 administrative hearing.  (R. 34-62).  On December 7, 2022, the ALJ issued a decision unfavorable to Plaintiff.  (R. 14-33).  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on April 18, 2023, thus making the ALJ's decision the final decision of the Acting Commissioner for purposes of judicial review.  (R. 1-6).

On June 20, 2023, Plaintiff filed a complaint in the United States District Court for the Eastern District of Pennsylvania.  (Compl., ECF No. 1).  On June 26, 2023, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(C). (Consent Order, ECF No. 4).  On October 9, 2023, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 8).  On December 4, 2023, the Acting Commissioner at the time filed a Response, to which Plaintiff filed a Reply on December 17, 2023.  (Resp., ECF No. 11; Reply, ECF No. 12).

## II.    FACTUAL BACKGROUND

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on October 30, 2000.  (R. 352).  She graduated from high school with autism support.  (R. 474-90).  Plaintiff has no past relevant work.  (R. 25).

### A.    Medical Evidence[2]

On December 11, 2013, Kevin Hoffman, Psy.D., conducted a consultative mental status

---

[2]  Because Plaintiff's claim and the parties' briefing focuses primarily on the medical opinion evidence and administrative medical findings rather than treatment records, the Court likewise centers its discussion of the medical evidence on these documents.

evaluation of Plaintiff.  (R. 587-95).  Plaintiff reported difficulty falling asleep, fluctuating

appetite, dysphoric moods, psychomotor retardation, crying spells, guilt, hopelessness,

diminished self-esteem, concentration difficulties, diminished sense of pleasure, excessive

apprehension and worry, fatigue, irritability, restlessness, difficulty concentrating, muscle

tension, avoidance of social settings, phobic responses to bugs and the dark, germaphobia,

family-induced panic attacks (one or two total), and memory deficits.  (R. 590).  However, she

denied suicidal/homicidal ideation, manic symptomology and thought disorders.  (*Id.*).  Her

mental status examination results were normal, with fair insight and judgment.  (R. 590-91).  Her

activities of daily living (ADLs) included personal care, preparing food every other day (on

average), monthly shopping, managing money, talking with others, playing video games, going

to school, reading, and socializing with friends online.  (R. 591).  She reported that her family

relationships were "going pretty well."  (*Id.*).  Her prognosis was recorded as fair.  (R. 592).

In the attached Medical Source Statement, Dr. Hoffman checked boxes indicating that

Plaintiff had mild limitations in making judgments on simple, work-related decisions and

understanding, remembering, and carrying out simple instructions, and moderate limitations in

making judgments on complex, work-related decisions and understanding, remembering, and

carrying out complex instructions; interacting appropriately with others; and responding

appropriately to usual work situations and to changes in a routine work setting.  (R. 594).

On December 21, 2018, State agency psychological consultant Peter Garito, Ph.D.,

determined that Plaintiff had no limitations in understanding, remembering or applying

information or in concentrating, persisting or maintaining pace and only mild limitations in

interacting with others and managing oneself.  (R. 84).

On March 13, 2019, psychiatric reviewer Edward Jones, Ph.D., found that Plaintiff had

no significant limitation in any component area of understanding and memory, sustained

concentration and persistence, or adaptation (with the exception of responding appropriately to changes in work setting, in which she was moderately limited).  (R. 612-13).  Regarding social interaction, there was no evidence of significant limitation in maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness or in asking simple questions or for assistance, although she had moderate limitations in interacting appropriately with the general public, accepting instructions and responding appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (R. 613).

On October 21, 2019, Zachary McClain, M.D., of the Children's Hospital of Philadelphia, Adolescent Specialty Care, wrote a letter stating that he had treated Plaintiff for the last two years and that she suffers from gender dysphoria, major depression, generalized anxiety disorder and autism spectrum disorder.  (R. 647).  Dr. McClain opined that Plaintiff had difficulty functioning under the pressures of everyday life and that she tends to self-isolate, with past suicidal ideation.  (*Id.*).  He noted that prescribed antidepressants have helped, although Plaintiff "still struggles."  (*Id.*).  He added that Plaintiff's volunteer experience the prior summer was stressful for her because it "required her to interact with strangers and take public transportation and during this time her mental health did deteriorate."  (*Id.*).

On November 7, 2022, Plaintiff's mental health providers, Anika Vaughn-Cooke, M.D., and Margaret S. Anderson, MSW, LSW, of COMHAR in Philadelphia completed a Functional Assessment regarding Plaintiff.  (R. 1718-21).  They indicated that they had treated Plaintiff weekly for two years and four months.  (R. 1718).  They checked boxes indicating that Plaintiff suffers from memory difficulties, sleep disturbances, obsessions or compulsions, feelings of guilt/worthlessness, suicidal ideation or attempts, intrusive thoughts of traumatic events, mood disturbances, emotional lability, generalized persistent anxiety, decreased energy, panic attacks,

anhedonia or pervasive loss of interests, difficulty concentrating or thinking, and illogical thinking. (R. 1718). However, they indicated that she had improved her self-confidence and success in relating to her family and online friends, although interactions with others remained stressful. (*Id.*). They noted that Plaintiff can "melt down" if she feels judged and had a panic attack due to being late for an appointment. (*Id.*). Dr. Vaughn-Cooke and Anderson indicated that Plaintiff showed "intelligence and insight" but struggles "taking in what is being said to her . . . ." (*Id.*).

Diagnoses included autistic, anxiety and major depressive disorders. (R. 1719). Plaintiff showed no symptoms during a remote assessment other than repeated requests to restate questions, but self-reported symptoms included marked difficulty reading facial expressions or deciphering tone of voice consistent with autistic disorder, panic attacks consistent with anxiety disorder, and great difficulty finding motivation to engage in activity and frequent anhedonia consistent with major depressive disorder. (*Id.*). Plaintiff also responded well to treatment. (*Id.*). Cognitive behavioral therapy and relationship-building interventions improved her confidence in relationships with friends and family, and she also participated in an online group for transgendered people. (*Id.*). She complied with her medication and appointment schedule. (*Id.*). The providers assessed the following prognosis: "Lily is likely to struggle with these issues most of her life, but over time can come to build self-esteem and coping mechanisms to engage more fully in society – perhaps as soon as 2-3 years." (*Id.*).

Dr. Vaughn-Cooke and Anderson predicted that Plaintiff would miss more than three workdays per month due to her conditions. (R. 1720). They opined that she would have difficulty working at a regular job on a sustained basis. (*Id.*). They pointed to her internship where she became "overwhelmed with panic" when instructed to keep pace. (*Id.*). It was further noted that Plaintiff had canceled medical appointments at times due to not wanting to leave the

house.  (*Id.*).

The medical providers assessed marked difficulties in interacting with others, adapting or managing oneself and understanding, remembering, or applying information, and extreme difficulties in concentrating, persisting, or maintaining pace.  (*Id.*).  More specifically, they assessed moderate limitations in the abilities to follow work routine without extra supervision, sustain an ordinary work routine without extra reminders, ask questions or request assistance, accept instructions and respond appropriately to criticism, get along with coworkers without distracting them, maintain socially appropriate behavior, maintain appropriate personal appearance, adhere to basic standards of neatness and cleanliness, and be aware of normal hazards and take appropriate precautions; marked limitations in the abilities to remember and follow work-like procedures, complete a normal workday without interruptions from symptoms, work at consistent pace without excessive rest periods, interact appropriately with the general public, behave in an emotionally stable manner, relate predictably and reliably, and understand, remember, and follow simple instructions; and extreme limitations in the abilities to concentrate and ignore distractions, sustain attention/concentration without interruption, adapt appropriately to changes in the work setting, and travel in unfamiliar places.  (R. 1721).

### B.     Non-Medical Evidence

The record also contains non-medical evidence.  On November 11, 2018, Plaintiff completed an Adult Function Report.  (R. 404-15).  She indicated that thinking about working made her "anxious, nervous and afraid."  (R. 408).  She reported her ADLs as attending school, playing video games, preparing daily meals (30 to 40 minutes), washing dishes, using public transportation, talking to friends (online and in person at school) and reading.  (R. 408, 410-12).  She had no problems with personal care, except she required reminders and sometimes has difficulties with hair care.  (R. 409-10).  She stated that she can count change but not otherwise

manage money, in part because she has never had to do so.  (R. 411).  She checked boxes indicating difficulties with hearing, memory, completing tasks, concentration, understanding and following instructions.  (R. 413).  She noted that she can pay attention for 20 minutes but cannot follow written or spoken instructions well or handle stress or changes in routine.  (R. 413-14).  However, she reported getting "along well with everyone."  (R. 414).  Plaintiff's mother also completed a Third Party – Adult Function Report that largely tracks the form completed by Plaintiff.  (R. 392-403).

At the administrative hearing on November 17, 2022, Plaintiff testified that she has no work experience but that she completed a two-month internship at the Academy of Natural Sciences in Philadelphia, working two days per week for a total of 12 hours.  (R. 41-42).  She described "severe difficulties with communicating with people" at the internship.  (R. 42).  However, once she "got a little bit used to" talking to museum guests "it was okay."  (*Id.*).  She had one panic attack during her internship, which was brought on by social requirements and having to keep pace.  (*Id.*)  During the panic attack she self-isolated in a closet; generally, she must sit down and cry.  (R. 44).  She has never had one in front of another person, and she testified that she had not "been too stressed or anxious in quite a while," as of the time of the hearing.  (R. 44, 52).  Her "biggest challenge" at the internship was remembering what to say to people, although she also had trouble approaching and interacting with people she did not know.  (R. 42-43).  She also became "overwhelmed" and "overheated" when looking for supplies in a large closet.  (R. 44).  She participated in group activities with other coworkers and interns, and over time this became "a little bit easier," at least in part because they would "pick up the slack" for her.  (R. 43).

Plaintiff also reported "severe motivation issues" on most days affecting her ability to get out of bed and engage in personal care, unless she has "something very pressing like [a] court

case . . . ."  (R. 45).  She spends most of her time in her room talking online to friends around the country and the world, although she has minimal physical interaction with people other than her family members who live with her.  (R. 45-46).  She further testified to body image issues, "[s]evere anxiety" causing her to studder and affecting her ability to make eye contact, memory problems requiring reminders, and occasional intrusive, suicidal thoughts.  (R. 46-48, 51). Taking public transportation allegedly makes her "a nervous wreck."  (R. 48).  She claimed that the reason she had not sought post-graduation employment was because she was waiting to complete her name change process.  (R. 49-50).

The record also contains Plaintiff's educational records.  (R. 474-90).  She earned good grades, and as of her senior year, she anticipated attending a four-year college or university.  (R. 474, 481).  She scored at or above grade level on standardized testing.  (R. 479).  She demonstrated good overall class participation and exhibited age-appropriate functional behaviors.  (*Id.*).  She rarely needed to utilize his special education supports.  (*Id.*).


III.    **ALJ'S DECISION**

Following the administrative hearing, the ALJ issued a decision in which she made the following findings:

1.    The claimant attained age 18 on October 29, 2018 and was eligible for supplemental security income benefits as a child for the month preceding the month in which he attained age 18. The claimant was notified that he was found no longer disabled as of December 1, 2018, based on a redetermination of disability under the rules for adults who file new applications.

2.    Since December 1, 2018, the claimant has had the following severe impairments: body dysmorphia, generalized anxiety disorder, depression and autism spectrum

disorder (20 CFR 416.920(c)).

3.      Since December 1, 2018, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that since December 1, 2018, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is able to understand and remember simple and routine tasks and instructions. The claimant is able to concentrate and persist for at least two hour intervals with normal breaks. The claimant can perform work without supervision. The claimant can interact with co-workers and supervisors occasionally. The claimant can have no interaction with the public. The claimant can adapt to occasional routine workplace changes.

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on October 30, 2000 and is a younger individual age 18-49 (20 CFR 416.963).

7.      The claimant has at least a high school education (20 CFR 416.964).

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.      Since December 1, 2018, considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.     The claimant's disability ended on December 1, 2018, and the claimant has not

become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(R. 17-27).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 27).


## IV.     LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that she cannot engage in substantial gainful activity because of a medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of at least 12 months.  42 U.S.C. §

1382c(a)(3)(A).  In redetermining eligibility for benefits when a child recipient turns 18, the SSA

applies the last four steps of the five-step process normally used for adult claimants, skipping the

issue of whether the individual is engaged in substantial gainful activity.  20 C.F.R. §

416.987(b); *Maldonado v. Kijakazi*, No. 22-36, 2022 WL 17742618, at *1 (E.D. Pa. Dec. 16,

2022).  The process goes as follows:

> [T]he Commissioner considers in the second step whether the
> claimant has a "severe impairment" that significantly limits her
> physical or mental ability to perform basic work activities.  If the
> claimant suffers a severe impairment, the third inquiry is whether,
> based on the medical evidence, the impairment meets the criteria of
> the impairment listed in the "listing of impairments," . . . which
> result in a presumption of disability, or whether the claimant retains
> the capacity to work.  If the impairment does not meet the criteria
> for a listed impairment, then the Commissioner assesses in the
> fourth step whether, despite the severe impairment, the claimant has
> the residual functional capacity to perform her past work.  If the
> claimant cannot perform her past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4).

Although the burden is initially on the claimant, it shifts to the Commissioner at step five to

establish that, given the claimant's age, education, work experience, and mental and physical

limitations, she is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

Plaintiff's request for review raises a single claim: "Remand is required because the ALJ ignored the consistent medical opinion evidence regarding Ms. Stellar's actual occupational functioning." (Pl.'s Br., ECF No. 8, at 3). This claim primarily implicates the following discussion by the ALJ of the opinions of Dr. McClain and of Dr. Vaughn-Cooke/Anderson:

> On October 21, 2019, Zachary McClain, M.D., the claimant's mental health provider, opined that it would be difficult for the claimant to carry out the basic functions to hold down a job because of her depression and anxiety and related symptoms. (7F/1). The undersigned finds this opinion inconsistent with and not supported by the objective medical evidence. Specifically, the undersigned finds that the claimant's records, as discussed in detail above, support their having the ability to perform simple and repetitive job tasks, and engage in occasional interaction with supervisors and co-workers. Therefore, the undersigned finds this opinion to be not persuasive.
>
> On November 7, 2022, Ankia Vaugh-Cook, [sic] M.D. and Margaret Anderson, LSW, the claimant's mental health providers,

> opined that the claimant had an extreme limitation in the functional area of concentrate, persist, or maintain pace, and marked limitations in the functional areas of understand, remember, or apply information, and in adapt and manage oneself. They opined that the claimant's impairments or side effects from medication would cause the claimant to be absent from work more than three times per month. (18F/3). The undersigned finds this opinion to be inconsistent with and not supported by the objective medical evidence. Specifically, the undersigned finds this opinion to be an overestimation of the limitations caused by the claimant's impairments and symptoms. As discussed in detail above in evaluation of the four functional areas, the undersigned finds that the claimant has no more than moderate limitations in any mental functional area. The undersigned applies the above detailed analysis of the four functional areas to this opinion and finds this opinion to be not persuasive.

(R. 24-25).

### A.    The Parties' Positions

Plaintiff asserts that pursuant to SSR 11-2p the ALJ should consider "information about how well a young adult performed in [community] placements" intended to provide job training or experience because it can assist the ALJ in assessing the individual's functionality.  (Pl.'s Br., ECF No. 8, at 3).  She insists that such information is "crucial" or "critical" to determine her ability to work competitively because for the bulk of her disability period she was a student.  (*Id.* at 4, 6).  Noting that the regulations require ALJs to consider a medical opinion's consistency with other evidence and opinions, she accuses the ALJ of ignoring the opinions' consistent findings that her community-based internship at the Academy of Natural Sciences had a significant negative impact on her functioning.  (*Id.* at 4-6 (citing R. 647-48, 1718-21; 20 C.F.R. §§ 416.920c(b)-(c))).  Specifically, she contends that the ALJ disregarded: (1) her statement to Dr. McClain that she found the internship "stressful" because it required her to take public transportation and interact with strangers and (2) his conclusions that Plaintiff's mental health

"deteriorate[d]" accordingly and that she would struggle in a work setting.[3]  (*Id.*).  As for Dr.

Vaughn-Cooke and Anderson's opinions, Plaintiff highlights their determination that Plaintiff

was "overwhelmed with panic when a certain pace needed to be maintained for work."  (*Id.* at 5).

Citing 20 C.F.R. § 416.920c(c)(3), she observes that these medical providers, who treated

Plaintiff for over two years, may have a superior longitudinal understanding of her impairments.

(*Id.*).  She also cites *Barnett v. Colvin*, 3:15–cv–00987–JE, 2017 WL 1100470, at *8 (D. Or.

2017) for the proposition that an ALJ commits reversible error when he or she ignores evidence

about a young adult's community work experience.  (*Id.* at 5-6).

       The Commonwealth counters that the ALJ fully complied with applicable regulations and

that substantial evidence supports her source-level analysis of the opinions at issue.  (Resp., ECF

No. 11, at 3-4, 8 (citing 20 C.F.R. § 416.920c(b)(1))).  He maintains that she properly provided a

"single analysis" for each opinion and denies that she was required to specifically explain why

she did not adopt each individual limitation proffered therein or discuss the extent to which each

opinion was consistent with every other piece of record evidence.  (*Id.* at 3-5, 8-9 (citing 20

C.F.R. § 416.920c(b)(1))).  Additionally, he quotes 82 Federal Register 5844-01, at 5858 for the

proposition that the regulations require meeting only a "reasonable articulation standard" that

allows a reviewing court "to trace the path of an adjudicator's reasoning," not that the

adjudicator provide a "written analysis about how [he or she] considered each piece of

evidence."  (*Id.* at 4-5).  The Commissioner posits that the ALJ met this standard when she

addressed the consistency of Dr. McClain's and Dr. Vaughn-Cooke/Anderson's opinions with

the record as a whole and that she was not required to directly compare the two opinions with

---

      [3]  Notwithstanding this last conclusion of Dr. McClain, Plaintiff concedes that the
disability determination is ultimately "reserved for the commissioner."  (Pl.'s Br., ECF No. 8, at
4-5; *see also* Resp., ECF No. 11, at 9 (asserting that the statement "was an opinion on an issue
reserved to the Commissioner and not entitled to any special significance")).

one another.  (*Id.* at 5 (citing 20 C.F.R. § 416.920c(c)(2))).  He cites three cases from district

courts within this circuit holding that an ALJ need not specifically address medical opinions'

consistency with each other.  (*Id.* at 5-6 (citing *Freedline v. Kijakazi*, No. CV 21-405, 2022 WL

4464955, at *1 (W.D. Pa. Sept. 26, 2022); *Piotrowski v. Saul*, No. 1:19-CV-17563, 2021 WL

1851851, at *9 (D.N.J. May 7, 2021); *Marencic v. Comm'r of Soc. Sec.*, No. 3:18-cv-1863, 2020

WL 879410, at *7, 9 (M.D. Pa. Jan. 27, 2020))).  He adds that if ALJs were required to address

the consistency of treating source opinions with each other, they would have to do the same for

State agency findings and consultative examinations.  (*Id.* at 6).

   Turning specifically to Dr. McClain's opinion, the Commissioner contends that the ALJ

appropriately provided a source-level, single analysis of the document, explaining that it was

inconsistent with and unsupported by the evidence previously detailed in the decision showing

normal mental functioning, such as Dr. Hoffman's consultative examination.  (*Id.* at 6-7 (citing

R. 23-24, 590-91)).  The Commissioner notes that Drs. Garito and Jonas also found, respectively,

no significant limitations and no more than moderate limitations and that an ALJ does not ignore

evidence of a claimant's limitations simply because he or she credits other opinions finding

lesser limitations.  (*Id.* at 7-8 (citing R. 84, 608; *Bullock v. Colvin*, No. 13-3692, 2015 WL

3999520, at *9 (E.D. Pa. July 1, 2015))).  He adds that, aside from these opinions, Plaintiff's

completion of her internship notwithstanding alleged difficulties further supports her ability to

maintain a job.  (*Id.* at 7 (citing 20 C.F.R. § 416.971; *Sigmon v. Califano*, 617 F.2d 41, 42-43

(8th Cir. 1980))).  Nonetheless, he points out that the ALJ agreed with Dr. McClain that Plaintiff

requires limitations on her ability to interact with others, like coworkers/supervisors and the

public, and assessed restrictions accordingly (only occasional and no interaction, respectively).

(*Id.* at 8).

   The Commissioner continues that Dr. McClain's statements regarding Plaintiff's

"stressful" internship and resulting mental "deterior[ation]" are not "medical opinions" requiring evaluation under the regulations because they do not describe specific work-related functionality or impairments. (*Id.* at 9 (citing 20 C.F.R. § 416.913(a)(2))). He observes that SSR 11-2p also only requires the ALJ to "consider," but not articulate, how a young adult performed in any community placement, even though the ALJ did the latter here when she specifically addressed Plaintiff's ability to "carry out the basic functions to hold down a job" as well as her self-reported difficulties following instructions, concentrating, and completing tasks. (*Id.* at 10 (citing R. 19-20, 22, 24)). The Commissioner quotes Third Circuit case law holding that "a written evaluation of every piece of evidence is not required, as long as the ALJ articulates at some minimum level her analysis of a particular line of evidence." (*Id.* (quoting *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004))). He further notes that Plaintiff cannot assume that the ALJ did not consider any particular piece of evidence in light of her statement that she considered the "entire record." (*Id.* at 9 (citing R. 680; *Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008))).

Regarding the opinion of Dr. Vaughn-Cooke and Anderson, the Commissioner submits that the ALJ properly determined that it, too, was inconsistent with and unsupported by the objective medical evidence, specifically that showing that Plaintiff had no more than moderate limitations in the four functional areas as reflected in Dr. Hoffman's opinions, her generally normal mental status examinations (except for occasional anxious mood), and ADLs such as preparing meals and using public transportation. (*Id.* at 11 (citing R. 20-21, 25, 54)). Quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) for the position that an "ALJ is not only entitled, but required to choose between" conflicting medical opinion, the Commissioner submits that the ALJ was entitled to credit the opinions of Drs. Hoffman, Garito and Jonas (finding no or lesser limitations) over that of Dr. Vaughn-Cooke and Anderson (finding greater limitations).

(*Id.* (citing R. 84, 608 (additional citations omitted))).  In response to Plaintiff's argument that the ALJ failed to specifically address Dr. Vaughn-Cooke and Anderson's statement that Plaintiff "was overwhelmed with panic when told a certain pace needed to be maintained for work," the Commissioner reiterates that the "reasonable articulation" standard and requirement to provide only a "source-level" analysis absolve the ALJ of any duty to discuss every restriction set forth in a medical opinion.  (*Id.* at 12 (citations omitted)).  He maintains that, in any event, the ALJ discussed this statement when she explained that Dr. Vaughn-Cooke and Anderson's opinion that Plaintiff had an "extreme limitation in the functional areas of concentrate, persist, or maintain pace" was not in keeping with the other record evidence.  (*Id.* (citing R. 24-25)).  He argues that this fact distinguishes this case from Plaintiff's District of Oregon case, *Barnett*, where the ALJ wholly ignored the opinion of the claimant's vocational counselor, including the finding that he required an onsite job coach for his first three months of employment.  (*Id.* at 12-13 (citing 2017 WL 1100470, at *8)).

In reply, Plaintiff denies that she seeks to have any particular medical opinion or limitation adopted, but reiterates that remand is required for the ALJ to apply the correct legal standard and analyze the consistent evidence of the harmful effects of her only job placement experience, which she claims the ALJ improperly ignored as irrelevant. (Reply, ECF No. 12, at 2).  She repeats that her treating providers concluded that her participation in the internship worsened her mental health symptoms, further limiting her function, but notes that the Commissioner's only reference to SSR 11-2p was to point out that it requires the ALJ to consider but not explain how Plaintiff performed in this job placement.  (*Id.*).  She continues that even if this statement satisfied SSR 11-2p, remand is warranted because the regulations still required the ALJ to explain her rejection of consistent medical opinion evidence recording her mental deterioration while working at the internship.  (*Id.* (citing 20 C.F.R. § 416.920c)).

Plaintiff distinguishes *Freedline*, *Marencic* and *Piotrowski* on the basis that they were decided under prior regulations that did not mandate that an ALJ independently explain his or her consideration of consistency.  (*Id.* at 3-5.)  She maintains that these cases are contrary to the current regulations requiring ALJs to provide more explanation of their consideration of consistency and supportability and points out that the Commissioner agreed in his brief that the new regulations constituted an "enhancement" of the old ones.  (*Id.* at 4-5 (citing 20 C.F.R. § 416.920c)).  Citing the Federal Register, she emphasizes that the new regulations require ALJs to articulate their findings concerning medical opinions from "all of an individual's medical sources" and that the purpose of this regulatory change was not to reduce the ALJ's burden to explain his or her findings but to allow a reviewing court to trace his or her reasoning.  (*Id.* at 4-5 (citing 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017))).  In an apparent reference to 20 C.F.R. § 416.920c, she asserts that the authority cited by the Agency cannot support an affirmation in this case because none of it is "based on the rule the Agency created to ensure an ALJ's path of reasoning was clear to reviewing courts . . . ."  (*Id.* at 4.)  She insists that the ALJ must explain his or her rejection of consistent medical opinions because under the regulations an opinion is "more persuasive" insofar as it comports with other medical and non-medical source evidence. (*Id.* (citing 20 C.F.R. § 416.920c)).

Plaintiff argues that the Commissioner's assertion that ALJs do not have to assess the consistency of a medical opinion with the other medical opinions in the record is contradicted by regulations requiring them to consider whether such an opinion is consistent with other medical and non-medical source "evidence," which the regulations define to include objective medical evidence, medical opinions, and prior administrative findings.  (*Id.* at 5 (citing 20 C.F.R. §§ 416.913(a), 416.920c)).  She submits that no reasonable basis exists upon which to conclude that the SSA did not intend for the consistency assessment to address other medical opinions and if it

had so intended it was required to explicitly state that.  (*Id.*).  She further accuses the ALJ of misconstruing "source-level" analysis as absolving her of the duty to explain her rejection of limitations in medical opinions, when in fact it merely allows an ALJ considering "multiple medical opinion(s) or prior administrative medical finding(s)" to do so "together in a single analysis."  (*Id.* at 6 (quoting 20 C.F.R. § 416.920c); citing *Rodriguez v. Kijakazi*, 2022 WL 4770388, at *12 (S.D. Fla. 2022); *Neil Allen O. v. Comm'r of Soc. Sec.*, 2021 WL 4496943, at *6 (D. Idaho 2021); *Castro v. Saul*, 2021 WL 4190640, at *6 (E.D.N.C. 2021)).  Plaintiff maintains that each finding within a medical opinion is not independently a medical opinion itself because in that case ALJs would have to set forth "nearly no explanation for their medical opinion findings at all," contrary to the new regulations.  (*Id.*).

### B.    Analysis

The Commissioner modified Social Security's regulations in 2017, changing the way ALJs evaluate medical evidence.  The prior regulations, governing claims filed before March 27, 2017, divided medical sources into three categories: treating, examining, and non-examining. *See* 20 C.F.R. § 416.927(c).  ALJs were to weigh each medical opinion and could sometimes afford controlling weight to opinions from treating sources. *See id.* § 416.927(c).

Under the new regulations, ALJs do not place medical sources into these categories and can no longer afford controlling weight to any opinion.  *See id.* § 416.920c(c).  Instead, ALJs now evaluate the persuasiveness of each medical opinion and each prior administrative medical finding.  *See id.* § 416.920c(c).  Five factors determine persuasiveness:  (1) supportability; (2) consistency; (3) relationship with the claimant, including length, purpose, and extent of the treatment relationship, as well as frequency of examinations and whether the medical source examined the claimant firsthand; (4) specialization; and (5) other factors, like "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our

disability program's policies and evidentiary requirements." *See id.* § 416.920c(c).

Supportability and consistency are the most important factors. *Id.* § 416.920c(b)(2).  ALJs need

not explain their determinations regarding the other factors, but they must discuss supportability

and consistency. *Id.* § 416.920c(b)(2).

Regarding supportability, "[t]he more relevant the objective medical evidence and

supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(1).  Regarding consistency,

"[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive

the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 416.920c(c)(2).

Section 416.920c(b)(1) allows for "[s]ource-level articulation." *Id.* § 416.920c(b)(1).

Because it is often infeasible given the amount and array of evidence in the record for ALJs to

articulate their consideration of each medical opinion or administrative medical finding from the

same source individually, they may do so "in a single analysis," even where the source has

provided multiple opinions or findings. *Id.*

It is well established that an ALJ is free to reject a medical source opinion but in so doing

must indicate why evidence was rejected so that a reviewing court can determine whether

"significant probative evidence was not credited or simply ignored." *Chandler v. Comm'r of

Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

An ALJ must consider all pertinent medical and non-medical evidence and "explain [any]

conciliations and rejections," *Burnett*, 220 F.3d at 122, but he or she need not discuss "every

tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004),

Accordingly, "[t]he ALJ must provide a 'discussion of the evidence' and an 'explanation of

reasoning' for [her] conclusion sufficient to enable meaningful judicial review." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (quoting *Burnett*, 220 F.3d at 120).

### 1. Dr. McClain's Opinion

The ALJ's evaluation of Dr. McClain's opinion fails to articulate its consistency as required by 20 C.F.R. § 416.920c. Instead, it merely references the opinion's inconsistency with "the objective medical evidence," which in the next sentence the ALJ purportedly "specifi[es]" to mean "the claimant's records, as discussed in detail above . . . ." (R. 24). Under the prior regulation, § 416.927(c)(4), the ALJ was required only to consider the consistency of a medical opinion "with the record as a whole," as the ALJ indicates she did here. However, under the new regulations, § 416.920c(c)(2), the ALJ must explain a medical opinion's consistency "with the evidence from other medical sources . . . ."[4] The ALJ's vague references to "the objective medical evidence" and "the claimant's records" fail to satisfy this new standard. Indeed, the ALJ's statement that she considered the opinion in the context of records discussed earlier in her decision only underscores the incompleteness of her analysis because the opinions of Dr. Vaughn-Cooke/Anderson and Dr. Garito were not addressed until *after* her discussion of Dr. McClain's opinion. (*See* R. 24-25).

In reaching its decision, the Court does not hold that the ALJ must necessarily address: (1) the consistency of every medical opinion or administrative medical finding with every other medical opinion or administrative medical finding, or (2) each specific finding contained within a medical opinion or administrative medical finding, as Plaintiff suggests at times in her briefing. (*See* Pl.'s Br., ECF No. 8, at 5-6; Reply, ECF No. 12, at 5). 20 C.F.R. § 416.920c specifies no

---

[4] As Plaintiff notes, this fact renders inapplicable the Commissioner's cited cases applying the previous standard. *See Freedline*, 2022 WL 4464955, at *1 n.3 (applying prior regulation); *Piotrowski*, 2021 WL 1851851, at * 6 (same); *Marencic*, 2020 WL 879410, at *8 (same).

such requirement, and it is well-established that the ALJ need not discuss "every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). However, where, as here, the ALJ only generalizes to the record "as a whole," without any further attempt to articulate an opinion's consistency with the opinions and evidence from other sources, even collectively, the decision does not pass muster under § 416.920c(c)(2).  Such treatment fails the "reasonable articulation standard" because it does not permit a reviewing court "to trace the path" of the ALJ's reasoning or, specifically in this case, to satisfy itself that the ALJ properly considered the consistency factor as set forth in the cited regulation. *See* 82 Fed. Reg. 5844-01, at 5858.

The Commissioner relies heavily on § 416.920c(b)(1) to argue that the ALJ properly provided a "[s]ource-level articulation" of Dr. McClain's opinion.  (Resp., ECF No. 11, at 3-4, 6-9).  This concept allows an ALJ to articulate how he or she considered multiple medical opinions from one medical source "together in a single analysis . . . ."  20 C.F.R. § 416.920c(b)(1).  But the issue here is not a purported failure to provide separate analyses of other opinions of Dr. McClain.  Even the cited subsection reiterates that the ALJ must evaluate the opinion(s) of a medical source "using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate," which includes the requirement that the ALJ articulate the consistency of a medical source's opinion evidence "with the evidence from other medical sources and nonmedical sources in the claim . . . ." *Id.* § 416.920c(c)(2).  However, as set forth above, the ALJ did not do this regarding Dr. McClain's opinion.

The Commissioner's remaining arguments also fail to sway the Court from its determination that remand is required.  His observations that Dr. McClain's opinion was inconsistent with: (1) Dr. Garito's findings that Plaintiff had no significant limitations in mental functioning and (2) the fact that, despite alleged difficulty, Plaintiff completed her internship,

amount to nothing more than impermissible *post hoc* rationalizations of the ALJ's decision.
*Schuster v. Astrue*, 879 F. Supp. 2d 461, 466 (E.D. Pa. 2012) ("post-hoc rationalization[s]" are
not considered because "[t]he ALJ's decision must stand or fall with the reasons set forth in the
ALJ's decision.") (quoting *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154, at *3 (E.D.
Pa. May 20, 2008)).  The ALJ mentioned neither as a reason for discounting Dr. McClain's
opinion, and, on its face, the decision's reference to the "records" discussed "above" omits the
ensuing examination of Dr. Garito's opinion.  (R. 24-25).  This vague reference arguably
includes the earlier discussion of Dr. Jonas's opinion also relied upon by the Commissioner in
his response, but as noted at the outset of this subsection, it nonetheless fails to comport with the
consistency articulation requirements of § 416.920c(c)(2).  Finally, the Commissioner notes that
the ALJ assessed limitations on Plaintiff's ability to interact with others, but this does not alter
the fact that she rejected Dr. McClain's opinion as "not persuasive" overall.  (R. 24).  Because
she failed to adequately explain that rejection as required by § 416.920c(c)(2),[5] the Court will
remand this matter.

**2.      Dr. Vaughn-Cooke and Anderson's Opinion**

The ALJ's evaluation of Dr. Vaughn-Cooke and Anderson's opinion also fails to
properly articulate consistency as required by 20 C.F.R. § 416.920c.  Although the ALJ claims
that this opinion, too, is "inconsistent with . . . the objective medical evidence," her only
supporting explanation is that the opinion purportedly overestimates Plaintiff's limitations
because, "[a]s discussed in detail above, the undersigned finds that the claimant has no more than

---

[5]  In her opening brief, Plaintiff asserts that the ALJ's decision also conflicts with SSR
11-2p's requirement that the ALJ consider a young adult's performance in internships and
similar placements, although she appears to back off that position in her reply.  (Pl.'s Br., ECF
No. 8, at 3; Reply, ECF No. 12, at 2).  Because the Court remands this matter on the basis of 20
C.F.R. § 416.920c, it does not decide whether the decision also runs afoul of SSR 11-2p.

moderate limitations in any mental functional area." (R. 25).  In other words, the ALJ rejected this opinion because she had previously determined at the step two analysis of whether Plaintiff met a listed impairment that she has, at maximum, only moderate limitations.  (*Id.*; *see also* R. 19-20).  But simply rejecting a medical source opinion on the basis of a prior conclusion made at an earlier step does not permit a reviewing court to determine whether the ALJ has adequately considered the opinion.  Specifically, the ALJ's abbreviated statement that Dr. Vaughn-Cooke and Anderson's opinion is "not persuasive" because the ALJ had already made up her mind that Plaintiff is at most only moderately limited does not reflect that she evaluated the consistency of that opinion "with the evidence from other medical sources," as required by the regulations.  *See* 20 C.F.R. § 416.920c(c)(2).

The Commissioner maintains that the ALJ is required to choose between conflicting opinions, which is what she allegedly did here when she credited the opinions of Drs. Hoffman, Garito and Jonas over that of Dr. Vaughn-Cooke and Anderson.  (Resp., ECF No. 11, at 11 (citing *Cotter*, 642 F. 2d at 706)).  But neither the ALJ's step four discussion of the latter opinion nor her earlier step two discussion that she cross-references therein mentioned any of these opinions.[6]  (R. 19-20).  Thus, the Commissioner[7] again merely offers a *post-hoc* justification for the ALJ's faulty decision.  *Schuster*, 879 F. Supp. 2d at 466.

---

[6]  The ALJ cited three times to results from Dr. Hoffman's mental examination of Plaintiff, but as the Commissioner highlights in his brief, the definition of a "medical opinion" is limited to "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the abilities listed" in the applicable regulation.  20 C.F.R. § 416.913(a)(2).

[7]  The remainder of the Commissioner's arguments concern whether the ALJ was required to address specific statements made within Dr. Vaughn-Cooke and Anderson's opinion.  (Resp., ECF No. 11, at 12-13 (citing SSR 11-2p; *Barnett*, 2017 WL 1100470, at *8)).  However, as with Dr. McClain's opinion, the Court does not remand on this basis, and it therefore does not consider these arguments further.

For these reasons, the Court remands this matter for further proceedings consistent with this memorandum.


## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **GRANTED**.  This matter is remanded for further proceedings consistent with this memorandum.


BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge